# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ELMER AND ALEXA BUENTE**                                               **PLAINTIFFS**

**V.**                                           **CIVIL ACTION NO. 1:05CV712 LTS-JMR**

**ALLSTATE INSURANCE COMPANY, ET AL.**                           **DEFENDANTS**

## MEMORANDUM OPINION

The Court has before it Defendant Allstate Insurance Company's (Allstate) motion for judgment on the pleadings under F.R.Civ.P. 12(c).  In considering this motion, the Court must accept as true the well-pleaded facts set out in the complaint, and the Court must allow all inferences favorable to the plaintiffs *Lowrey v. Texas A & M University System,* 117 F.3d 242 (5ᵗʰ Cir.1997).  Dismissal is proper only if it appears that the plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The complaint alleges the following relevant facts:  In June 2005, Plaintiffs purchased a residence in Gulfport, Mississippi.  At the time this property was purchased, Plaintiffs also purchased a policy of homeowners insurance from Defendant Allstate.  The policy (Policy Number 915930365) is attached to the complaint as Exhibit A.  The policy was in force during the policy period June 24, 2005, through June 24, 2006.

The Allstate policy was sold through Allstate agent Brenda Pace.  Plaintiffs have alleged that ". . . Allstate and its agent Brenda Pace expressly represented to Plaintiffs that they would have full and comprehensive coverage for any and all hurricane damage, including any and all damage proximately, efficiently, and typically caused by hurricane wind and 'storm surge' proximately caused by hurricanes." (Complaint, Paragraph 11).

Plaintiffs have also alleged that they made an inquiry to Allstate representative Ms. Pace as to whether they needed to purchase additional flood insurance. This inquiry was apparently answered, according to the complaint, not by Ms. Pace, but by one of her employees. The plaintiffs allege that ". . . prior to purchasing the home, Sue (with Brenda Pace's office, Allstate's agent) told Plaintiffs they were required to have hurricane insurance on the residence. However, when Plaintiffs asked Allstate's agent Pace about whether they should also obtain optional 'flood coverage,' Sue told them that they did not need additional flood coverage because they did not live in a flood plain. In this conversation, this same Allstate representative further affirmed that Plaintiffs' hurricane coverage would cover any damage caused by a hurricane." (Complaint, Paragraph 12).

Plaintiffs allege that they relied upon the representations set out in paragraphs 11 and 12 of the complaint. Specifically, the complaint alleges that "Plaintiffs. . .relied upon Allstate's agent's representations that their hurricane coverage would cover any damage caused by a hurricane and thus they did not need flood insurance." (Complaint, Paragraph 14).

Paragraphs 15 and 16 of the complaint set out a number of allegations that are not part of the well-pleaded complaint. These allegations, which the Court is not obliged to accept, concern the plaintiffs' interpretation of the terms of the insurance contract, including the endorsement containing the "Hurricane Deductible." *Baker Farms, Inc. v. Hulse*, 54 Fed.Appx.404 (5th Cir.2002). The meaning of the unambiguous terms of an insurance policy are determined by the Court as a matter of law, not as questions of fact. *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578 (5th Cir.1974).

Plaintiffs allege that they reasonably relied upon the representations made by Allstate's representatives and upon their own subjective expectations concerning the coverage provided by the insurance policy in making the decision not to purchase flood insurance coverage. (Complaint, Paragraph 17).

On August 29, 2005, the insured property was damaged during Hurricane Katrina. Plaintiffs allege that the damage was caused by "hurricane wind, rain, and/or storm surge from Hurricane Katrina." (Complaint, Paragraph 18).

Plaintiffs allege that "Plaintiffs also called the Allstate 'Natural Disaster Hotline' to inquire whether the damage to their residence would be covered under the subject policy. The Allstate representative they spoke to assured Plaintiffs that damage from 'storm surge' would be covered under the subject policy." (Complaint, Paragraph 20).

The adjuster Allstate sent to inspect the insured property after Hurricane Katrina told the plaintiffs that "Allstate only pays him for adjustment of damages caused by wind, not water." (Complaint, Paragraph 21).

Allstate tendered its check for $2,600.35, representing the amount of the covered loss (net of the applicable deductible) as determined by the Allstate adjuster. Plaintiffs contend that their covered losses are between $50,000 and $100,000. (Complaint, Paragraph 22).

## The Provisions of the Allstate Policy

Allstate's insurance policy number 915930365 is identified on its face as "Allstate Property and Casualty Insurance Company Deluxe Homeowners Policy." Allstate's agent is identified as Brenda S. Pace; 440 Courthouse; Gulfport, MS 39507. The policy contains the following relevant provisions:

With respect to the insured dwelling (Section I, Coverage A) and other structures (Section I, Coverage B):

*Losses We Cover. . .*
        *We will cover sudden and accidental direct physical loss to [the insured property]. . . except as limited or excluded in this policy.* (Policy Pages 5 through 8 )

*Losses We Do Not Cover. . .*
        *We do not cover loss to the [insured] property consisting of or caused by:*

      1.    *Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.*
                           * * *

-3-

4.      *Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.*

\*   \*   \*

21.    *Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.*

\*   \*   \*

23.    *We do not cover loss to covered property. . . when:*
    *a)    there are two or more causes of loss to the covered property; and*
    *b)    the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above.*

With respect to personal property (Section I, Coverage C, Personal Property Protection):

*Losses We Cover. . .*
    *We will cover sudden and accidental direct physical loss to the [insured personal] property. . .except as limited or excluded in this policy, caused by:*

2.    *Windstorm or Hail.*
    *We do not cover:*
    *a)    loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall . . .*

\*   \*   \*

16.    *Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any building structure on the residence premises.  This does not include damage to the glass.*

*Losses We Do Not Cover. . .*
       *We do not cover loss to [insured personal] property caused by or consisting of:*

      1.     *Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.*

                    \*   \*   \*

      4.     *Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.*

                    \*   \*   \*

      13.   *Weather conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.*

                    \*   \*   \*

      15.   *We do not cover loss to [insured personal] property when:*
         a)    *there are two or more causes of loss to the covered property; and*
         b)    *the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover items 1 through 14 above.*

*Additional Protection*

   11.   *Collapse*
      *We will cover:*
      a)    *the entire collapse of a covered building structure;*
      b)    *the entire collapse of part of a covered building structure;*
      c)    *direct physical loss to covered property caused by (a) or (b) above.*
      *For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:*
      *a) a loss we cover under Section I, Coverage C–Personal Property Protection;*

-5-

<u>Applicable Rules of Law</u>

The Interpretation of the Insurance Contract

The interpretation of the terms of an insurance policy present questions of law, not fact.  *Gore v. American Motorist Insurance Co.*, 441 F.2d 10 (5th Cir.1971); *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So.2d 196 (Miss.2004). The terms of an insurance policy are to be interpreted under the rules of construction generally applicable to written contracts; and, where the terms of an insurance policy are clear and unambiguous, they are to be enforced as written. *Shaw v. Burchfield*, 481 So.2d 247 (Miss.1985); *Farmland Mutual Ins. Co. v. Scruggs*, 886 So.2d 714 (Miss.2004).  Any ambiguity in the terms of an insurance policy is to be resolved in favor of the insured and against the insurer who drew the contract.  *Williams v. Life Ins. Co. of Georgia*, 367 So.2d 922 (Miss.1979).  An insurance contract is to be considered as a whole, and each of its provisions should be given a reasonable interpretation that is, to the extent possible, consistent with the other terms of the contract. *Glantz Contracting Co. v. General Electric Co.*, 379 So.2d 912 (Miss.1973).

Liability of a Disclosed Principal for the Actions of Its Agent

As a general rule of law, both a principal and its agent are liable for the torts of the agent committed in the course and scope of the agency and within the actual or apparent authority delegated to the agent by the principal.  *Wheeler v. Frito-Lay*, 743 F. Supp. 483 (S.D.Miss.1990).  Mississippi law, which governs this diversity action, imposes no duty on the agent of an insurer to recommend particular coverages or to analyze the insurance  needs of a prospective customer (with the exception of a duty to properly inform the insured concerning uninsured motorist coverage, an exception that has no application to this case).  *Owens v. Mississippi Farm Bureau Cas. Ins. Co.*, 910 So.2d 1065 (Miss.2005).  In certain circumstances, however, an agent acting for an insurer with actual or apparent authority to do so, may make statements and representations that become legally binding on the insurer, and this is true even if the statements contradict the terms of an insurance policy.  *Nichols v. Shelter Insurance Co.*, 923 F.2d 1158 (5th Cir.1991); *Scott v.*

*Transport Indemnity Co.*, 513 So.2d 889 (Miss.1987).

### Claims Under the Express Terms of the Allstate Policy

When I apply these legal principles to the facts alleged in the complaint, it is apparent to me that Allstate's motion for judgment on the pleadings cannot be granted. Much depends on the evidence that may be adduced in support of the allegations of the complaint. But under the standards applicable to a motion for judgment on the pleadings under F.R.Civ.P. 12(c), i.e. accepting all of the material allegations of the complaint as true and granting the plaintiffs all reasonable inferences in support of their claims, I cannot say that there is no set of facts the plaintiffs may establish in support of their claim that would entitle them to relief.

I begin with the allegation of paragraph 18 of the complaint that the plaintiffs' property damage was caused by ". . .hurricane wind, rain, and/or storm surge from Hurricane Katrina . . . ." I accept this allegation as true, and I grant the plaintiffs the favorable inference that the destruction of their property was attributable in part to wind, in part to rain, and in part to storm surge.

As to the damage caused by wind and rain, there is apparently no dispute that these losses are covered by the policy. It is apparently undisputed that the winds generated during Hurricane Katrina were sufficient to do substantial damage to the roof of the plaintiffs' home. There is obviously a dispute about the extent of this covered loss. Allstate adjusted the plaintiffs' claim for wind damage and concluded that only $2,600.35 of the plaintiffs' damages were attributable to the effect of the hurricane winds. Allstate apparently acknowledges that its policy provides coverage for wind damage and for rain damage resulting from winds that breach the roof or walls of the insured premises.

The major dispute is whether losses attributable to "storm surge" are covered losses because the "storm surge" is wind driven or whether losses attributable to "storm surge" are excluded from coverage because such damages are caused by "water" (Exclusion 4) or by "flood, including but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these whether or not driven by wind" (Exclusion 1).

The exclusions found in the policy for water damage and for damages attributable to flooding are valid and enforceable policy provisions. Indeed, similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions. *Fireman's Insurance Co. v. Schulte*, 200 So.2d 240 (Miss.1967); *Lunday v. Lititz Mutual Insurance Co.*, 276 So.2d 696 (Miss.1973); *Lititz Mutual Insurance Co. v. Buckley*, 261 So.2d 492 (Miss.1972); *Home Insurance Co. v. Sherrill*, 174 F.2d 945 (5th Cir.1949); *Grace v. Lititz Mutual Insurance Co.*, 257 So.2d 217 (Miss.1972); *Commercial Union Ins. Co. v. Byrne*, 248 So.2d 777 (Miss.1971); *Litiz Mutual Insurance Co. v. Boatner*, 254 So.2d 765 (Miss.1971).

But because this is an exclusion from coverage in a comprehensive homeowners insurance policy, and because the exclusion constitutes an affirmative defense, Allstate would bear the burden of proving that the exclusion applies to the plaintiffs' claims. *Commercial Union Insurance Co. v. Byrne*, 248 So.2d 777 (Miss.1971). If the evidence were to indicate that part of the plaintiffs' losses were attributable to wind and rain (making them covered losses under the "Windstorm" provisions of Coverage C and under the broader "sudden and accidental direct physical loss" provision applicable to Coverages A and B) and part of the losses were attributable to flooding (which is excluded from coverage), the determination which was the proximate cause of the damage to any given item of property (or the determination of the proportion of the damage to any given item of property was proximately caused by each phenomenon) would be a question of fact under applicable Mississippi law. *Grace v. Lititz Mutual Insurance Co.*, 257 So.2d 217 (Miss.1972). Likewise, if the evidence shows that the damage occurred over time, so that wind damage preceded damage from a "storm surge," the wind damage would be a covered loss even if subsequent damage from the "storm surge" that exacerbated the loss were properly excluded from coverage. *Litiz Mutual Insurance Co. v. Boatner*, 254 So.2d 765 (Miss.1971).

Because this policy carries a specific "Hurricane Deductible Endorsement," it is apparent to me that it was intended to cover damages sustained in a hurricane because of the effects of rain, hurricane winds, and objects that might be carried by those winds, whether or not there was also damage caused by high water. Thus, to the extent Allstate contends that the hurricane itself, i.e. the hurricane winds and rain, would constitute a weather condition that would relieve them of liability for damage to insured property (under Exclusion 21 in Coverages A and B and/or

Exclusion 13 in Coverage C), I find that the policy is ambiguous and its weather exclusion therefore unenforceable in the context of losses attributable to wind and rain that occur during a hurricane. Under applicable Mississippi law, where there is damage caused by both wind and rain (covered losses) and water (losses excluded from coverage) the amount payable under the insurance policy becomes a question of which is the proximate cause of the loss. To the extent that the Allstate policy is inconsistent with this settled rule of Mississippi law, under Exclusion 21 of Coverages A and B and Exclusion 13 of Coverage C, the exclusionary language is invalid.

I find that Exclusion 23 under Coverages A and B and Exclusion 15 under coverage C create ambiguities in the context of damages sustained by the insured during a hurricane. These provisions purport to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where any excluded cause of loss, e.g. water damage, is "the predominant cause of the loss." I find that these two exclusions are ambiguous in light of the other policy provisions granting coverage for wind and rain damage and in light of the inclusion of a "hurricane deductible" as part of the policy. To the extent that plaintiffs can prove their allegations that the hurricane winds (or objects driven by those winds) and rains entering the insured premises through openings caused by the hurricane winds proximately caused damage to their insured property, those losses will be covered under the policy, and this will be the case even if flood damage, which is not covered, subsequently occurred. Again, these are fact-specific inquiries that must be resolved on the basis of the evidence adduced at trial. For purposes of resolving Allstate's motion, I must give the plaintiffs the benefit of all reasonable inferences available to support their claim.

Of course, I cannot know at this juncture what the evidence will be. It is likely that both the plaintiffs and Allstate will present expert evidence on the issue of the cause or causes of the damage to the plaintiffs' property. But it is my opinion, upon a thorough review of the terms of the Allstate policy, that the damage attributable to wind and rain will be covered, regardless of whether a later inflow of water caused additional damage that would be excluded from coverage.

<u>Representations Made by Allstate's Agent</u>

I turn next to the issue of plaintiffs' alleged reliance on the representations of Allstate's agent.  Again, I accept as true, the allegations of the complaint.  That is, I accept as true the plaintiffs' allegations that they asked Allstate's representatives whether they needed to purchase a flood insurance policy; that the Allstate representatives told them that the purchase of a separate flood insurance policy would not be necessary because their house was situated outside the flood plain and that all damage attributable to a hurricane, including damage caused by "storm surge,"  would be covered by the homeowners policy at issue.

Under applicable Mississippi law, an agent for an insurance company has the authority to make certain binding representations on behalf of the insurer, and, in certain circumstances, the insurer and the agent may be liable for misrepresentations concerning issues of coverage. Nichols v. Shelter Insurance Co., 923 F.2d 1158 (5th Cir.1991).

Allstate's agent was under no duty to advise the plaintiffs what coverages were necessary for the protection of their property.  Yet if the plaintiffs made an inquiry of the agent and the agent (or one of her employees with actual or apparent authority to respond to the inquiry), in response, made the representations concerning coverage that the plaintiffs have alleged, Allstate may have potential liability for all of the damage to the plaintiffs' property.  Again, this is a fact-specific inquiry into exactly what the plaintiffs asked and exactly what was said in response to their inquiry.

I cannot tell from the documents before me when the policy in question was actually delivered to the plaintiffs.  The cover letter is undated.  The policy took effect on June 24, 2005, and presumably the policy was delivered around this date.  The date that the plaintiffs received the policy may be relevant to the question of whether it was reasonable to rely on the statements attributed to Allstate's agent in the complaint.  At this juncture, plaintiffs are entitled to the inference that their reliance was reasonable.

Under the standards applicable to a Motion To Dismiss under F.R.Civ.P. 12(c), I cannot say, as a matter of law, that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.  Accordingly, the Allstate

motion will be denied.

An appropriate order will be entered.

**ENTERED** this 24th day of March, 2006.

s/ *L. T. Senter, Jr.*

L. T. Senter, Jr.
Senior Judge